THE STATE OF KANSAS, *Appellee*, V. WILLIAM SHEROW, *Appellant.*

No. 17,988.

SYLLABUS BY THE COURT.

BILLIARD HALLS—*License, by Township Board—Constitutional Law.* Section 9666 of the General Statutes of 1909, authorizing township boards to grant licenses for billiard halls, pool halls and bowling alleys within the township whenever in the judgment of the board it shall be to the best interests of the township to grant the same, is a valid exercise of the police power, and does not delegate legislative powers nor confer judicial powers, nor is it any objection to the validity of the statute that no appeal is provided from the refusal of the board to issue such permit.

Appeal from Reno district court. Opinion filed May 11, 1912. Affirmed.

*George A. Neeley,* for the appellant.

*John S. Dawson,* attorney-general, and *E. T. Foote,* county attorney, for the appellee.

The opinion of the court was delivered by

PORTER, J.: The appellant was charged and convicted of unlawfully conducting a pool hall at the town of Langdon, in the township of Langdon, in Reno county, without a license. The only point raised by his appeal is that the statute upon which the information was founded is unconstitutional and void. The portion of the statute involved here reads as follows:

"The township trustee, township treasurer and township clerk in each organized township in the state, for the purpose of carrying out the provisions of this act shall constitute the township board of such township, and shall have power to issue licenses for billiard halls, pool halls and bowling-alleys within their respective townships, whenever in their judgment it shall be to the interest of their respective townships to grant the same." (Gen. Stat. 1909, § 9666.)

It is claimed that the statute confers upon the township board judicial, ministerial and legislative powers and commingles them in a manner forbidden by the constitution. These contentions are fully answered in *The State v. Railway Co.*, 76 Kan. 467, 475-478, 92 Pac. 606, where the same objections were urged against the statute creating the board of railway commissioners and defining its duties. To the same general effect, see, also, *Coleman v. Newby*, 7 Kan. 82; *Keyes v. Snyder*, 15 Kan. 143 (where the herd law of 1872 [Gen. Stat. 1909, §§ 9179-9183] was held constitutional, although it gave to county boards the power to direct what animals should be allowed to run at large); *In re Sims, Petitioner*, 54 Kan. 1, 37 Pac. 135, 25 L. R. A. 110, 45 Am. St. Rep. 261; *In re Davis*, 58 Kan. 368, 49 Pac. 160. The township is one of the appropriate instrumentalities of the state for administering general laws within its boundaries. The legislature enacted the law and conferred upon the township board the power to administer its provisions in their discretion. The power is purely administrative in its character, and is neither judicial nor legislative within the meaning of these terms as applied to the three departments of government.

Pool halls and billiard halls are proper subjects of police regulation. (*Burlingame v. Thompson*, 74 Kan. 393, 86 Pac. 449.) There it was held that cities of the third class may be authorized by the legislature to prohibit their maintenance and operation within the city limits. For cases from other states holding similar legislative acts valid, see *Commonwealth v. Kinsley*, 133 Mass. 578, and *Morgan v. State*, 64 Neb. 369, 90 N. W. 108.

Another objection urged is that the power conferred upon the township board is arbitrary, because the statute provides that the board may issue a license "whenever in their judgment it shall be to the interest of their respective townships to grant the same." (Gen. Stat.

1909, § 9666.) The cases which appellant has cited in support of his contention relate to some useful trade or business, like keeping a pharmacy. Thus, in *Noel v. The People*, 187 Ill. 587, 58 N. E. 616, a statute was held unconstitutional because it conferred upon the board the power in their discretion to issue the permit. A business may require regulation in some respects, and yet its character be such as to entitle the owner to demand a license from the proper authorities upon due compliance with the provisions of the license law. Another may be of such a character that the legislature, in the exercise of the police power of the state, may prohibit it altogether, or may confer upon the license board the power to grant or refuse a license in their discretion. Generally speaking, the character of the business furnishes the test. If the business belongs to the class recognized as useful, and is not one which the state, in the exercise of its police power for the general welfare of the people, has the right to limit, the legislature would not be warranted in conferring upon local agencies or license boards the arbitrary power to grant or refuse a license to carry it on. A case which illustrates one exception to the general rule is *Schaake v. Dolley*, 85 Kan. 598, 118 Pac. 80. The business there involved was banking, which is recognized everywhere as not only useful but generally indispensable; but because it has become a business the conduct of which materially affects all other business, it was said to be, for all purposes of state regulation and control, "affected with a public interest"; and an act of the legislature was held valid which conferred upon the charter board power to refuse a permit for a state bank at a place where, in the opinion of the board, there was no public necessity for its establishment. The opinion also fully answered the contention that the statute delegates legislative power and confers upon the charter board arbitrary discretion.

If the legislature may authorize the charter board to

grant or refuse a permit to carry on a business so generally useful and indispensable as that of banking, when in the judgment of the board the public welfare requires that the permit be refused, it would seem to be well within the scope of legislative regulation and control to confer upon a local agency of the state power, in their discretion, to grant or refuse a permit to operate a pool room, which is a business far outside the class usually recognized as useful. It is true, as appellant contends, that a pool hall is not a nuisance *per se*, but common experience has demonstrated that it may become a nuisance. The opinion in *Burlingame v. Thompson*, 74 Kan. 393, 86 Pac. 449, cites with approval the following language of the Missouri supreme court:

" 'It is very clear that those exercising useful trades and occupations do not occupy the same relation to society as those engaged solely in giving amusement to the public, and a much larger discretion should be given in regulating the latter than the former.

" 'Keepers of billiard-tables are not recognized by the state as exercising a useful occupation. They are subjected to police regulation by the state and by cities under powers granted them by the state. (R. S. ch. 16.) They are prohibited from allowing minors to play upon their tables. (R. S. § 715.) *Villages may prohibit them altogether.* (R. S. § 1672.) Public billiard-halls are regarded by many as vicious in their tendencies, leading to idleness, gambling and other vices. (*The City of Tarkio v. Cook*, 120 Mo. 1, 10, 25 S. W. 202, 203, 41 Am. St. Rep. 678.)' " (p. 395.)

It was within the power of the legislature to leave to township boards the discretionary power to grant or refuse the license, and the act is not void because there is no provision for an appeal from the action of the board. See *The State v. Durein*, 70 Kan. 13, 80 Pac. 987, wherein it was held that the power conferred upon the probate judge to grant permits for the sale of intoxicating liquors was not judicial; and that the failure of the act to provide for an appeal from his refusal to issue a permit did not render the act unconstitutional.

This court has always endeavored to interpret acts of the legislature with the utmost liberality and to uphold them, unless beyond reasonable doubt they are found to conflict with some provision of the higher law. Doubts have always been resolved in favor of the statute. The statute in question has stood unchallenged for more than a quarter of a century, a fact which furnishes an additional reason, if one were necessary, for upholding it. In the light of the decisions referred to, however, none of the objections can be regarded as casting any doubt upon the validity of the statute.

The judgment is affirmed.