Christopher A. PRIDDY, Appellant,

v.

The CITY OF TULSA, Oklahoma, a municipal corporation, Appellee.

No. M 93–1263.

Court of Criminal Appeals of Oklahoma.

Sept. 26, 1994.

### *ACCELERATED DOCKET ORDER*

Appellant was convicted July 13, 1993, in the Municipal Court of the City of Tulsa, Case No. 9464157, of No License to Engage in Business as a Sign Contractor. The Honorable William J. Hiddle fined Appellant $300.00 plus costs. From this Judgment and Sentence, Appellant, pro se, appeals.

The propositions of error raised by Appellant on appeal are:

1. The [Appellant] was arraigned on the initial Information, in citation form, on the charge that the Appellant committed the crime of having *"No Permit For Work Performed"—Title 51—Tulsa Building Code § 2901.5.* Appellee's motion to amend the original Information, after arraignment, was a substantive one, charging a crime not previously pleaded to in the original Information. The amended charge accuses the Appellant of committing the offense of having *"No License to Engage in Business as a Sign Contractor"—Title 51—Tulsa Building Code § 2906.1.* The Trial Court erred in allowing the amendment without requiring or allowing arraignment on the subsequent charge in violation of Article 2, § 20 of the Oklahoma State Constitution and Title 22, § 304 of the Oklahoma Statutes.

2. The Tulsa Municipal Building Code, pertaining to licensure of sign painters, promulgated under the guise of regulatory law, and admittedly not as a taxing ordinance for the purpose of raising revenue, as adopted, is overly broad, vague, and monetarily intrusive, and as Appellant demonstrated at trial, does not fulfill the intended purpose, namely, to insure the health, safety, and welfare of the general public. As such, the ordinance is an obvious revenue scheme, which violates the rights of the class of law abiding individuals involved in the vocation of lettering preexisting and pre-

viously city permitted sign structures, and the costs involved in maintaining the enforcement of the combined regulatory and licensing schemes exceed what is required to facilitate compliance.

3. The Appellee's assertion at trial that the City's sign ordinance has a legitimate purpose in insuring some arbitrary, and undefined aesthetic function is a nullity, and the court erred in determining that such a function is a legitimate one for purposes of licensing individuals who merely letter privately owned signs, notwithstanding fact that the ordinance imposes no standard or guide for its enforcement, and gives uncontrolled discretion to the enforcing officials, and the court erred in not allowing Appellant to prove lack of standards and uncontrolled enforcement.

Pursuant to 22 O.S.Supp.1993, Ch. 18, App., *Rules of the Court of Criminal Appeals,* Rule 11.2, this appeal was automatically assigned to the Accelerated Docket of this Court. The propositions or issues were presented to this Court in oral argument August 18, 1994, pursuant to Rule 11.5(c). At the conclusion of oral argument, the parties were advised of the decision of this Court.

We agree with Appellant that the City Ordinance under which he was convicted, Sections 2906.1 of Title 51, as it applies to sign painters, is unconstitutional. Further, we find Section 201.0 as it applies to sign painters is unconstitutional; and Section 2901.5, insofar as it requires a license for sign painters in addition to a permit is unconstitutional.

Section 2906.1: "License. No person, firm, or corporation shall be issued a permit or engage or offer to engage in, by advertisement or otherwise, a business as a sign contractor until such person, firm or corporation has secured a license and has paid an annual fee of One Hundred Fifty Dollars ($150.00) therefor, has provided evidence of insurance and has posted the bond as required herein."

Section 201.0: ". . . Sign Contractor: Any person, firm or corporation engaged in the business of manufacturing, assembling, transporting, installing, erecting, repairing, painting, altering, servicing, or removing signs as herein defined, and maintaining permanent business address or telephone."

Section 2901.5: "Permits Required. No sign shall be erected, altered or relocated without a permit issued by the code official, except as otherwise provided herein. Where electrical permits are required, they shall be obtained at the same time as the sign permit. No permit required for any sign work shall be issued, and no sign for which such permit is required shall be erected unless the person, firm or corporation erecting the same shall have paid the current license fee as herein provided and shall have executed and delivered a bond and insurance as herein provided. . . ."

In addition to the $150.00 annual license fee, a painter of signs in the City of Tulsa is required to have a $25,000 public liability and property damage insurance policy, a $50,000 personal injury and death insurance policy, a $5,000 property damage insurance policy, and a $2,000 surety bond. *See* Sections 2906.2 and 2906.3 of Title 51. The requirements for a license with an annual fee and the insurance policies and surety bond are in addition to the requirement for a permit and a $25,000 removal bond. *See* Sections 2901.5 and 2906.2.1.

■ Title 11 O.S.1991, § 22–107 allows a municipality to establish license requirements as it deems appropriate in the exercise of its police power. Therefore, the City of Tulsa has the power to enact and enforce ordinances to protect the public peace, order, health, morals and safety of its inhabitants. However, to sustain encroachment on an individual's liberty, there must be an obvious and real connection between the ordinance and its purpose to protect the public welfare and this purpose can be served in no less restrictive means. *See Cryan v. State,* 583 P.2d 1122 (Okl.Cr.1978).

The City of Tulsa could not justify to this Court how the public welfare of the City of Tulsa was enhanced by requiring both a license and a permit.

■ A license gives to the licensee a special privilege not accorded to others and which the licensee otherwise would not enjoy.

Once a power to license exists, certain acts become illegal for all who have not been licensed. *See* 51 Am Jur 2d § 1; 53 C.J.S. § 2(a).

■ In *State v. Wiggenjost,* 130 Neb. 450, 265 N.W. 422 (1936), the Supreme Court of Nebraska found the license feature of a sign ordinance, which was required in addition to a permit, not enforceable. We agree with the Nebraska Supreme Court that the right to acquire the means of supporting life by honest labor and skill is an inherent right of a lawabiding citizen. Further, we agree that the vocation of painting signs does not imply any sinister influence on the public calling for municipal surveillance in the form of a license.

■ We can understand the desirability of each municipality requiring a permit before a sign is authorized. However, if each municipality requires a permit for each sign and then requires the sign painter to also be licensed to paint signs within that municipality, the ability of a sign painter to practice his trade will be gravely restricted. We find it would be highly unreasonable and overly burdensome for a sign painter to be required to be licensed in each municipality in which the sign painter might find work.

We also note that Tulsa's ordinance appears to apply to stable, established sign painters who have a permanent business address and telephone, but does not appear to apply to itinerant sign painters.

■ Further, the City of Tulsa's requirement of a license to paint signs contains no regulatory qualifier to review for such things as competency or proficiency. The only qualification appears to be the ability to pay the annual fee and to obtain the required insurance policies and surety bond. When all persons engaged in the business of sign painting, without qualification, may obtain a license upon payment of the stipulated sum to do business, subject to no prescribed rule of conduct, the presumption is strong that the power of taxation and not the police power is being exercised. *See Ex parte Davis,* 72 Okla.Crim. 152, 114 P.2d 186 (1941).

The City of Tulsa may not interfere with a person's right to work where there is no logical connection between its ordinance and its purpose to protect the safety of its citizens. No evidence was shown that "sign painting" might be injurious to public health, peace or morals so as to require regulating and supervision.

**IT IS THEREFORE THE ORDER OF THIS COURT,** by a four (4) to zero (0) vote, the judgement and sentence is **REVERSED** and **REMANDED** to the Municipal Court of the City of Tulsa with instructions to dismiss. Further, the Court finds the city ordinances, Sections 2906.1, 201.0, and 2901.5 of Title 51, as they apply to sign painters, are unconstitutional. We want to emphasize that the findings in this order are narrowly limited to "sign painting", not the aesthetics of the sign, or erecting or removing a sign, etc.

**IT IS SO ORDERED.**

/s/ Gary L. Lumpkin
GARY L. LUMPKIN
Presiding Judge

/s/ Charles A. Johnson
CHARLES A. JOHNSON
Vice Presiding Judge

/s/ Charles S. Chapel
CHARLES S. CHAPEL
Judge

/s/ Reta M. Strubhar
RETA M. STRUBHAR
Judge